543 P.2d 865

**IDAHO STATE TAX COMMISSION,**
Plaintiff-Appellant,

v.

**BOISE CASCADE CORPORATION,**
Defendant-Respondent.

No. 11802.

Supreme Court of Idaho.

Dec. 17, 1975.

Wayne L. Kidwell, Atty. Gen., Theodore V. Spangler, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Cumer L. Green, of Green & Frost, Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant-respondent.

DONALDSON, Justice.

Following two audits and an informal hearing, the Idaho State Tax Commission, at a formal hearing, found Boise Cascade Corporation to be deficient in the collection of sales tax on prefabricated homes produced and sold by Boise Cascade. An order demanding payment of the taxes was ordered. At a *de novo* hearing before the Board of Tax Appeals the findings and order of the Tax Commission were reversed. The district court upheld the Board of Tax Appeals and the Tax Commission has now appealed to this Court.

The single issue on appeal is whether the district court was correct in determining that the construction and sale of prefabricated homes, pursuant to an existing contract with the landowner, came within I.C. § 63–3609(a) as it read during the time in question, requiring the payment of a use tax pursuant to I.C. § 63–3621, on the value of materials used. Appellant contends that these were retail sales under I.C. § 63–3609, requiring the payment of a sales

tax pursuant to I.C. § 63–3619, on the sales price of the homes.[1]

The Tax Commission, in support of its contention that Boise Cascade was involved in the sale of tangible personal property, refers to the House Revenue and Taxation Committee Report in Support of House Bill 222 (the Idaho Sales Tax Act) and a series of examples contained in that report to show the intent of the legislature in enacting I.C. § 63–3609(a). The Board of Tax Appeals examined these examples and made the following determination:

"The Tax Commission relied on Example 4 of the House Revenue and Taxation Committee Report in support of House Bill 222 under Section 63–3609(a), *Idaho Code*, to support its contention that the contractor constructing prefabricated buildings can never be regarded as improving the real property. That example reads as follows:

" 'Subcontractor agrees to furnish labor and materials for the erection of a shell home (a home which is prefabricated and later transported and affixed to a lot) for contractor. The contractor intends to sell the shell home to a purchaser who will have it installed on the purchaser's lot either by contractor or someone else. So the contractor may give a resale certification on those materials which are incorporated into the "shell home"; he will pay tax on those supplies which he uses in his operations which do not become a part of the "shell home". The subcontractor will take a resale certificate from contractor on the sale of materials as part of the contract.'

" 'Contractor will collect a sales tax from owner (the ultimate purchaser) on the entire sales price of the "shell home". If contractor erects the home, sales tax will be imposed on the entire price; if the price of the "shell home" is segregated from installation charges in the contract, that part of the contract which represents charges for installation will not be taxed. (See Sec. 13(b)(4)).'

"A reading of the examples shows that Example 4 was dealing with the special situation where a contractor was constructing a prefabricated building in the expectation and in the hopes that he would sell the prefabricated building to an owner of a site who would then transport it to his lot and have it installed. That this is the situation Example 4 deals with is shown by the language of the example. It is the *purchaser* who installed the prefabricated building. The second sentence of the example, which reads 'contractor intends to sell . . .', conclusively shows that the contractor is not obligated to build and affix the prefabricated building to the real property. Whoever subsequently purchases the building arranges for its fixation to the real property. Title to the prefabricated building passes to such person as personalty and the purchaser is the improver of the real property and not the contractor in the example given. Hence, in the example, the contractor

---

1. "63–3609. Retail sale—Sale at retail.—The terms 'retail sale' or 'sale at retail' mean a sale of tangible personal property for any purpose other than resale in the regular course of business or the rental of tangible personal property in the regular course of business.

(a) All persons engaged in constructing, altering, repairing or improving real estate are consumers of the material used by them; all sales of tangible personal property to such persons are taxable whether or not such persons intend resale of the improved property. * * *."

"63–3619. Imposition and rate of the sales tax.—An excise tax is hereby imposed upon each sale at retail at the rate of three per

centum (3%) of the sales price of all property subject to taxation under this act and such amount shall be computed monthly on all sales at retail within the preceding month. * * *."

"63–3621. Imposition and rate of the use tax.—An excise tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property acquired on or after July 1, 1965, for storage, use, or other consumption in this state at the rate of three per centum (3%) of the value of the property, and a recent sales price shall be presumptive evidence of the value of the property. * * *."

collects a sales tax on the sales price of personalty.

"Example 5 of the same section of such report, illustrating the operation of Section 63–3609(a), is also revealing. That example reads as follows:

"'Subcontractor agrees to provide services and materials in the construction of a "shell home" (as defined in Example 4) for contractor. Contractor intends to place the "shell home" on a lot which he owns and sell the house and lot. Subcontractor will give a resale certificate for those materials which will become a component part of the "shell home". Subcontractor is selling both labor (services) and material to the contractor. Contractor is a consumer as defined in Section 9(a). Subcontractor will collect a sales tax on the materials from contractor. If contractor later alters his intention and sells the "shell home" for installation on a lot owned by the purchaser, he will offset the sales tax he paid as illustrated by Section 13(a)(1).'

"It is clear from this example that under some circumstances contractor engaged in constructing a prefabricated building is engaged in improving real property and hence is taxed, but only on the materials used in the construction. If the contractor constructing a prefabricated home which he intends to place on a lot which he owns is the consumer under Section 63–3609(a), *Idaho Code*, certainly it should follow that a contractor engaged in constructing a prefabricated house which he is obliged to place on the lot of another and then attach it to its foundation is engaged in improving the real property to that person and to be treated as a consumer of the materials used and is taxed only on such materials, and not the selling price of the completed building. Similarly, the fact that under Example 5 if the contractor changes his intention and later sells the house to another for installation, he loses his status as a consumer under Section 63–3609(a), is clear evidence that Example 4 of the House Report relied upon by the Tax Commission applies to a situation where the contractor is constructing a prefabricated building, hoping to sell the house to a purchaser when completed, who will, himself, arrange for installation and hence the contractor is not engaged in improving real property."

We find the Board's analysis to be well reasoned and applicable to the facts of this case. Boise Cascade did not build any prefabricated homes without a contract and then offer them for sale. Rather, the course of business in all such transactions was as follows: The customer, an owner of a tract of land on which he wished a structure to be erected, entered into a contract with Boise Cascade Corporation which required Boise Cascade Corporation to construct a building according to plans and specifications of the customer, who could and did frequently modify basic model designs. Boise Cascade Corporation then proceeded to construct the building in one of its three factories. When Boise Cascade Corporation completed the structure, it was required by the contract to, and did, transport the completed building to the site of the owner, and place it on a foundation on the site, shim and level the building, attach the building to the foundation (which may or may not have been constructed by Boise Cascade Corporation), and perform other tasks. In all cases where Boise Cascade constructed a prebuilt or prefabricated building and attached it to a foundation at the site of the customer, the title to such building did not pass to the customer until Boise Cascade placed the building on the site of the customer, and attached it to its foundation.

Thus, the examples certainly support the lower court's finding that Boise Cascade was improving real property and not making retail sales of personalty. In addition, the Idaho Sales Tax Act defines "sale" as "any transfer of title, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property * * *."[2] Since title to

2. I.C. § 63–3612.

the home does not pass to the buyer until the home is fixed to the lot foundation there has been no sale of personalty, as defined by I.C. § 63–3612, but rather the improvement of real estate.

The only distinction between Boise Cascade's method of construction and that of the traditional on-site contractor is that Boise Cascade does a majority of its construction at their plant while a majority of the traditional contractor's work is done at the homeowner's lot. The legislature considered the process of construction to be a service and enacted I.C. § 63–3609(a) to tax the contractor for the materials consumed in the building process.[3] The fact that Boise Cascade's method of construction involves hauling the nearly completed home to the buyer's lot does not change the end result, that is, the landowner having a home on his previously unimproved lot.

It is the Court's opinion that the method employed by Boise Cascade does not alter the normal application of the use tax to contractors. Affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, SHEPARD, and BAKES, JJ., concur.

3. House Revenue and Taxation Report in Support of House Bill 222, p. 2 (1971).